With your argument now in the case of PNC Bank against Five-Star Audiovisual. Good morning, Your Honor. Paige Willen. Ms. Willen. Good morning, Your Honor. Paige Willen for Five-Star Audiovisual, and may it please the Court. The District Court erred when it dismissed Five-Star's counterclaims for breach of contract and fraud because it misconstrued the contracts between the parties and construed well-pleaded facts in favor of PNC instead of in favor of Five-Star as it was required to do at the pleading stage. PNC agreed to provide a $2.9 million PPP loan to Five-Star. In the contract evidencing that loan, which was entered into, quote-unquote, pursuant to the CARES Act, the parties agreed that the loan would be subject to a deferral period, would bear interest at 1%, and that the proceeds of the loan would be used for purposes permitted under the CARES Act, and if they were so used, that the loan would be forgiven. What provision of the note was violated? So Sections 1 through 3 and the attached Paycheck Protection Program certification, which is made part of the agreement with the bank in which the parties agree that the proceeds of the PPP loan would be used for permitted purposes under the CARES Act. You have to develop for us, though, how you say those provisions were breached because the issue here is whether or not there was sufficiently pleaded for a violation of the language there. What is your argument that that language has been violated? Certainly, Your Honor. So within hours after the PPP loan funds were deposited in Five-Star's account, PNC swept those funds and applied them to pay down principal on a pre-existing commercial loan that PNC had made to Five-Star. Understood. We're familiar with the facts, but the note doesn't address the allowable uses of the funds. In the attached certification, which is attached to the end of the note and in the language of the certification itself made part of the agreement with the bank, the parties agreed the proceeds of the PPP loan will be used to retain workers, et cetera, and the items that are listed here are the permitted uses of PPP funds under, I believe it's Section 1106 of the CARES Act. Your argument, though, would allow for a control of the funds after the transfer that I don't see in the note itself. When you're pleading a breach of contract like that, you've got to indicate where within the contract itself it had been violated. What language? Not the spirit of it, not a constructive. What's the language that was violated? I understand that, Your Honor. And our position is that the note, Sections 1 through 3 of the note, require the deferral period, the interest rate, and that the funds be used for permitted purposes under the Act. They didn't charge more than 1% interest, so they didn't violate that, right? Your Honor, although they didn't charge 1% interest on the PPP funds, this note, and in the certification it's very explicit, was entered into specifically to provide necessary cash. And by grabbing that cash. I'm totally lost. There is an agreement between Five Star and the federal government. Is the bank a party to that agreement? No, I'm sorry, Your Honor. The agreement was entered into by PNC and Five Star. So the PPP note is a contract. There are two, well, three contracts. There's the original revolving line of credit. There is the sweep rider. And then there is the terms of a loan from the federal government or secured by the federal government. Correct. You've been talking generally about the contract. Which of these three documents did PNC violate? The PPP note, the third in your list of three, Your Honor. May I continue, Your Honor? You can continue, but you haven't answered. Go ahead. Your Honor, the certification attached to the PPP note, as well as the preamble to that note and Section 3, explicitly referenced the CARES Act. And when the district court found that the CARES Act has, quote, no impact on the contractual language, it committed legal error. And it should have found that by sweeping the PPP funds and applying them for a purpose not permitted under the CARES Act, PNC breached the contract between the parties. Now, the other reason that the district court relied on to find that there was a breach. That's why I'm lost. And I suspect maybe it's what Judge Kendall said was all too clear. Right? Five star becomes entitled to this money. Correct. And it promised the bank in the sweep rider that any amount over a certain amount in the checking account would be used to satisfy the bank's loan. So the bank exercised that right. Now, how did that violate any language in any contract? Your Honor, because from five stars position is that when PNC agreed in the PPP notes that the funds provided under that note would be used only for the purposes provided for in the CARES Act and that they would be subject to the deferral period and the interest rate, that it agreed, it made a contrary agreement to the sweep rider. And it should not have exercised its rights under the sweep rider. PNC was a party to the note between the government and five star? That is correct. And maybe I should have stepped back and taken a minute to explain. The way that the PPP program worked was that banks entered into contracts directly with borrowers. So the PPP note is a contract between PNC and five star. Those are the two parties to the agreement. And everyone concedes that there's a contract between the parties. The fact that the funds are government-backed is related to an SBA guarantee of that loan. In other words, there's not a contract between five star and the government. There are statutes and government regulations that govern the use of PPP funds, but it's not a contractual relationship. Do your arguments have their genesis in the fact that these were originally counterclaims? Because the original claims that the bank brought, those have all been resolved, been dismissed, voluntarily dismissed under Rule 41. These were counterclaims perhaps to create leverage against the original claims? Your Honor, yes, it's correct that these are counterclaims. And five star did completely repay PNC for the loans that were the genesis of the original claim. These arise because when five star received its PPP funds, which it did because it was in a struggle for its life, PNC swept those funds and caused five star damage. It caused increased interest rates. It caused five star to have to scramble to find cash in this pandemic setting. And it's five star's position that PNC owes funds in recompense for that damage to five star, notwithstanding the fact that the primary loans have already been repaid. If the panel has no more questions, I'll reserve the remainder of my time. Certainly, counsel. Mr. Yingling. May it please the court. Patrick Yingling for PNC Bank. Five star's breach of contract and fraud claims, which are the only claims it advances on appeal, both depend on the false premise that the PPP note prohibited PNC from complying with the party's already existing sweep rider. The district court correctly ruled that, quote, nothing in the PPP note limits the continued applicability of the sweep rider. In fact, both agreements endorse its continued applicability. The sweep rider states that, quote, no modification, amendment, or waiver of this document shall be effective unless made in a writing signed by the bank. And the PPP note, which was executed two months later, states that, quote, the bank's rights and remedies here under are cumulative and not exclusive of any other rights and remedies the bank may have under other agreements. Now, where PNC had obligations under these agreements, it complied with those obligations. The PPP note required PNC at Five Star's direction to, quote, disperse the proceeds of the PPP loan to the operating account, which was the same account to which the sweep rider applied. And the sweep rider, in turn, stated, at the end of any business day, any final available balance in the operating account shall be automatically applied to the repayment of the outstanding principal balance under the line of credit. PNC complied with these two contractual covenants. Now, Five Star speaks about the purpose of the CARES Act in providing funds for payroll and similar things. And Five Star argues that this purpose prohibited PNC from complying with the party's sweep rider agreement. But this argument fails for a couple of reasons. First, at a very basic level, a general purpose cannot be used to contradict the plain terms of the PPP note, which expressly state that the bank's rights and remedies here under are cumulative and not exclusive of any other rights or remedies the bank may have under other agreements. Also, and secondly, maybe more importantly, the contractual obligation in the PPP note associated with using these proceeds for certain purposes belongs to Five Star and Five Star only. The CARES Act puts that obligation on the borrower because the borrower determines where those proceeds go. What if the borrower put in a different fund to which, or excuse me, a different account to which the sweeping agreement didn't apply? That would be perfectly fine, and borrower Five Star had that option here. They could have selected a different account, a separate account, and PNC would have been required to direct the funds to that separate account where the sweep rider didn't apply. But that's not what Five Star did here, and when Five Star took this action of directing PNC to put these funds into the operating account, PNC had a contractual obligation to sweep the account to pay down borrower's line of credit balance that was accruing interest at a high rate. Mr. Yingling, one of Ms. Willen's arguments is that paragraph three of the note would have been violating the forgiveness clause. In this instance, Five Star was still eligible for forgiveness under the CARES Act and the note, correct? That's right, and in fact Five Star does not allege that the government did not forgive this action and sought repayment in any way. The district court pointed this out with respect to the harm here and stated that Five Star has not alleged that PNC's sweep caused Five Star, for example, to become ineligible for forgiveness of its PPP loan. Another thing that counsel spoke about are these provisions in the PPP note that refer to the 1% interest rate and the deferral period. And they argue that PNC's compliance with the sweep rider had the effect of breaching these provisions. But these provisions pertain to how the PPP note is enforced. But as the district court recognized, PNC's sweep of the account was not done to enforce the PPP note, but rather to collect amounts due under the line of credit. And this comes directly from Five Star's complaint where it alleges that, quote, PNC caused funds to be swept from Five Star's operating account to pay off the line of credit, which was a preexisting obligation. Five Star does not allege that PNC ever sought repayment pursuant to the PPP note, and, in fact, PNC never did seek to enforce the PPP note. In its briefing, Five Star talks about how the district court should not have considered the sweep rider at all, but it was Five Star, not PNC, that put the sweep rider in front of the district court. Five Star includes an entire section of its complaint devoted to the, quote, sweep rider agreement, and Five Star attached the sweep rider agreement to its district court to correctly recognize that when an exhibit contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss. I'll move on to fraud specifically, unless the court has questions dealing with the breach of contract issue. And Five Star's fraud theory is based on its allegation that someone at PNC made the representation two days before the PPP note was executed that funds would be available for payroll and other expenses. And based on this, Five Star argues that it reasonably believed that the PPP note modified the sweep rider. But the district court correctly recognized that Five Star fails to plead facts showing reasonable reliance as a required element for fraud. Are the fraud damages different than the breach of contract damages? I don't think the alleged damage here is different in any way. I would actually submit that there's no harm in this whole circumstance regarding the allegations that Five Star puts forth because of the fact that the government did not forgive this loan. And these funds that were swept were actually used to pay down Five Star's balance on its line of credit that was accruing interest at a high rate. And the district court was right with respect to the reasonable reliance because after the representative of PNC made this alleged statement, Five Star then executed the PPP note and directed PNC to deposit those funds into the operating account, which was already subject to the sweep rider. Now, Five Star alleges that things were chaotic during the pandemic, but the purported chaotic nature of things at that time does not provide a basis for Five Star to reasonably say that it believes that the PPP note modified the sweep rider because this court has been clear that reliance cannot be reasonable when it presupposes a failure to read clear language. And the clear language in the PPP note stated that the bank's rights and remedies here under are cumulative and not exclusive of any other rights or remedies which the bank may have under other agreements. Five Star may regret not opening a new account to separate these funds, but that hindsight does not provide a basis to hold PNC liable, as the district court properly held. And for these reasons, I respectfully submit that the court should affirm the dismissal. Thank you. Thank you, counsel. Anything further, Ms. Weatherton? Thank you, Your Honor. Just a few points. First, on the forgiveness question, PNC is correct that Five Star didn't allege anything concerning the forgiveness of the PPP note in its counterclaims. However, although it's not in the record, I can represent to your honors that the PPP funds were partially, not completely forgiven, and that in order to do that, Five Star had to demonstrate that it used the amount of PPP funds that it received for permitted purposes. Now, because PNC took that cash, and recall that we're in a situation of a liquidity crisis where cash is the most important part of this bargain, Five Star had to go out and find alternative methods to cover those expenses that would permit it to find forgiveness. Do you want to touch on the reasonable reliance component of the fraud? Certainly, I do. Five Star adequately alleged reasonable reliance here, because this is not a situation where one contract explicitly governs the acts of the party. The district court erred in finding that Five Star, who alleged that it was not a sophisticated party, had less knowledge about banking than PNC, should have understood that the interaction between the PPP note and the sweep rider meant that the funds would be swept as soon as they went into Five Star's account. Now, that was contrary to what their trusted relationship advisor with PNC was telling them, and it was contrary to its understanding of what PNC agreed to in the PPP note, where PNC explicitly said, in the certification attached to the note that was made part of the agreement with the bank, that the funds would be used for permitted purposes under the PPP note. So this is not a case where there is explicit language in a contract, a sophisticated party who has all the time in the world and advisors to enable it to understand that its understanding of how events won't play out is contradicted by any kind of plain language. Instead, this is a case where the district court made a legal decision about how two contracts interact, and then said that that negates the element of justifiable reliance. And that's simply not what happened here. And for that reason, we'd ask that the court reverse the district court. Thank you, counsel. The case is taken under advisement.